# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 22, 2014     Decided December 16, 2014

No. 13-1313

CSX TRANSPORTATION, INC.,
PETITIONER

v.

SURFACE TRANSPORTATION BOARD AND UNITED STATES OF
AMERICA,
RESPONDENTS

TOTAL PETROCHEMICALS & REFINING USA, INC.,
INTERVENOR

———

On Petition for Review of Orders
of the Surface Transportation Board

———

*Paul A. Hemmersbaugh* argued the cause for petitioner. With him on the briefs were *G. Paul Moates*, *Matthew J. Warren*, *Peter J. Shudtz*, *Paul R. Hitchcock*, and *John P. Patelli*.

*Theodore L. Hunt*, Attorney, Surface Transportation Board, argued the cause for respondents. With him on the brief were *William J. Baer*, Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson*, *Nickolai G. Levin*, and *Daniel E. Haar*, Attorneys, *Craig M. Keats*, General

Counsel, Surface Transportation Board, and *James A. Read*, Attorney.

*Jeffrey O. Moreno* and *David E. Benz* were on the brief for intervenor Total Petrochemicals & Refining USA, Inc. in support of respondents.

Before: KAVANAUGH, *Circuit Judge*, EDWARDS, *Senior Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: The Surface Transportation Board ("STB" or "Board") has exclusive jurisdiction over interstate rail transportation, including the power to review and modify railroad rates to ensure that they are reasonable. 49 U.S.C. §§ 10501, 10701, 10707. However, the Board can only examine the reasonableness of a rail carrier's rate if it determines that the railroad has "market dominance" over the transportation route to which the rate applies. *Id.* §§ 10707(b), (d). A railroad has market dominance over a route in the "absence of effective competition from other rail carriers or modes of transportation." *Id.* § 10707(a).

On May 3, 2010, Total Petrochemicals & Refining USA, Inc. ("TPI") filed a rate complaint with the STB, alleging that numerous CSX Transportation ("CSX") common carrier rates were unreasonable. CSX moved for an expedited procedure with respect to questions related to market dominance. The Board granted the motion and bifurcated the adjudication into two phases – a market dominance phase and a second rate reasonableness phase. On May 31, 2013, the Board issued a decision, concluding that CSX had market dominance over 51 contested rates. On December 19, 2013, the Board rejected

requests for reconsideration. CSX immediately sought review by this court of the Board's interlocutory ruling regarding the 51 rates with respect to which CSX was found to have market dominance.

The Board contends that this action should be dismissed because the contested market dominance decision is merely an interlocutory, non-final order. In response, CSX asserts that the Board's decision is a final order that is subject to review by this court because the decision concludes the agency's market dominance decisionmaking process. The railroad also argues that the decision is reviewable independent of finality because in determining market dominance the Board adopted a new legislative rule without notice and comment. The Board has the better of both arguments.

Under the Hobbs Act, 28 U.S.C. § 2342, this court has jurisdiction to review only "final" orders of the Board. "Finality under the Hobbs Act is to be narrowly construed." *Blue Ridge Envtl. Def. League v. Nuclear Regulatory Comm'n*, 668 F.3d 747, 753 (D.C. Cir. 2012) (citation and internal quotation marks omitted). In an administrative adjudication, a final order typically "disposes of all issues as to all parties." *Id.* (citation omitted). There is no final order here because the Board has yet to inquire into the reasonableness of CSX's rates and has issued no adverse ruling with respect to any rate. That the STB acceded to CSX's request to bifurcate the adjudication does not change the fact that the decision in question is merely an interlocutory order issued in a matter that is still presently pending before the Board. And there is no exception to the final order rule for petitioners who allege that an agency has adopted a new legislative rule during the course of an adjudication without notice and comment. This is a matter that can be raised by CSX if it elects to appeal the Board's final decision at the conclusion of the adjudication. This court has

no jurisdiction at this stage of the administrative adjudication to interfere with the Board's process.

## I. BACKGROUND

On May 3, 2010, TPI filed a rate complaint with the STB. The complaint challenged the reasonableness of CSX's rates for transporting chemicals and plastics along a number of rail routes. Under the Board's normal procedure, parties submit evidence of market dominance and rate reasonableness simultaneously. *See Expedited Procedures for Processing Rail Rate Reasonableness, Exemption and Revocation Proceedings*, 1 S.T.B. 754, 760 (1996). However, CSX moved for an expedited determination of market dominance. The Board agreed, finding that CSX had raised "considerable doubts as to the shipper's ability to satisfy the Board's market dominance standard." *Total Petrochemicals USA, Inc. v. CSX Transp., Inc.*, No. NOR 42121, 2011 WL 1306807, at *3–4 (STB served Apr. 5, 2011).

The Board explained that "this rate case is extraordinarily complicated. With over 100 separate rates being challenged, the expected rate reasonableness inquiry will be very complex. Yet, if the railroad does not have market dominance over a substantial number of the lanes, the complexity of the rate reasonableness inquiry can be significantly reduced." *Id.* at *5. The Board also noted that if market dominance were resolved separately, the parties would be "spared the time and expense of filing rate reasonableness evidence where the carrier [would] not [be] found market dominant." *Id.* at *3. Accordingly, the STB bifurcated the proceeding into a preliminary market dominance phase and a second rate reasonableness phase. Due to the complexity of the case, the Board decided to employ a streamlined method for evaluating evidence of market dominance, first developed in *M&G*

*Polymers USA, LLC v. CSX Transp., Inc.*, No. NOR 42123, 2012 WL 4469326 (STB served Sept. 27, 2012).

On May 31, 2013, after the parties had submitted evidence, the Board issued its interlocutory decision on the market dominance issue. *Total Petrochemicals & Ref. USA, Inc. v. CSX Transp., Inc.*, No. NOR 42121, 2013 WL 2367766 (STB served May 31, 2013). The Board determined that CSX has market dominance over 51 of 84 disputed rates, and that the STB has administrative authority to examine the reasonableness of those rates. *Id.* at \*1. CSX conceded that it has market dominance over an additional 21 rates at issue before the Board. *Id.*

On December 19, 2013, the Board denied requests for reconsideration. CSX immediately appealed the Board's market dominance decision to this court. On appeal, the railroad argues that the *M&G Polymers* framework is a new legislative rule improperly adopted without notice and comment. CSX also argues that the new methodology is arbitrary and capricious and not in accordance with law. The Board has not yet determined whether any of CSX's rates are unreasonable, and has therefore issued no rulings affecting those rates.

## II.  ANALYSIS

### A.  *Standard of Review*

As noted above, this court has jurisdiction under the Hobbs Act to review "final orders" issued by the STB. 28 U.S.C. § 2342(5). There are two considerations relevant to determining finality: "whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether

rights or obligations have been determined or legal consequences will flow from the agency action." *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970). In the related context of reviewability under the Administrative Procedure Act ("APA"), the Supreme Court has explained that final orders (1) cannot be "tentative or interlocutory," and (2) must determine rights, obligations, or legal consequences. *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

A final order in an administrative adjudication is normally "one that disposes of all issues as to all parties." *Blue Ridge*, 668 F.3d at 753 (citation omitted). This rule is well understood in our jurisprudence and routinely applied with respect to all adjudications. As the Court noted in *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 243 (1980), judicial review of agency action "should not be a means of turning [an agency regulator] into [a] defendant before adjudication concludes."

## B. *Final Agency Action*

CSX presents two arguments why the Board's interlocutory determination of market dominance should be considered final. First, it claims that the Board's decision was final because it was the consummation of the agency's market dominance decisionmaking process. According to CSX, the decision affected its rights and obligations by concluding that the railroad's rates are within the agency's jurisdiction. Second, CSX claims that, in following a new method to evaluate the evidence of market dominance, the Board impermissibly adopted a new legislative rule without first engaging in notice and comment rulemaking. According to CSX, this action by the Board, without more, was enough to allow it to seek interlocutory review. Both arguments are simply wrong.

**1. The Board's Interlocutory Ruling on Market Dominance Was a Nonfinal Interlocutory Order**

The Board's decision on market dominance was an interlocutory order that did not "dispose[] of all issues as to all parties or fix the parties' rights and obligations." *Blue Ridge*, 668 F.3d at 757 (citation and internal quotation marks omitted) (alteration in original). A finding that market dominance exists "merely authorizes the [Board] to proceed to an adjudication of the reasonableness of the rate." *Ford Motor Co. v. ICC*, 714 F.2d 1157, 1159 n.2 (D.C. Cir. 1983); *see* 49 U.S.C. § 10707(c). CSX may well emerge victorious from the rate reasonableness phase, leaving nothing for them to appeal. "When completion of an agency's processes may obviate the need for judicial review, it is a good sign that an intermediate agency decision is not final." *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1215 (D.C. Cir. 1996).

Nothing in the text of the statute suggests that a ruling on market dominance would be anything but a normal interlocutory order issued during an adjudication. Such orders generally "must await review here until [the] final action is before us." *Citizens for a Safe Env't v. Atomic Energy Comm'n*, 489 F.2d 1018, 1023 (3d Cir. 1974). Indeed, counsel for CSX conceded as much at oral argument, acknowledging that bifurcation was wholly at the Board's discretion and a denial of bifurcation could not be appealed. When Congress seeks to ensure judicial review of Board orders that might otherwise be viewed as interlocutory, it knows how to do so. *See* 49 U.S.C. § 11325(a) (providing that an order rejecting a merger application as incomplete "is a final action of the Board"). There is no legislation authorizing judicial review of

intermediate market dominance decisions that issue before the adjudication of a rate complaint is done.

CSX argues that the Board's decision here differs from a typical interlocutory order because it created immediate obligations and legal consequences: specifically, it required the railroad to defend its rates and exposed it to the threat of rate prescriptions and reparations should it lose in the second phase of the adjudication. But this is just to say that the railroad faces an obligation to continue to litigate before the agency. "It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding." *Aluminum Co. of Am. v. United States*, 790 F.2d 938, 941 (D.C. Cir. 1986) ("*Alcoa*"). Although the burden of defending oneself in an adjudication "is substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *Standard Oil*, 449 U.S. at 242.

This case closely resembles *City of Benton v. Nuclear Regulatory Commission*, 136 F.3d 824 (D.C. Cir. 1998). In *Benton*, municipal utilities opposing amendments to a nuclear power plant's operating license challenged an order issued by a Commission director finding that there had been no changes in the licensees' activities significant enough to warrant antitrust review. Petitioners had requested a reevaluation of the findings before the agency, but the director reiterated his conclusion in response. *Id.* at 825. The court held that the director's order was nonfinal and interlocutory because it did not address the Commission's safety determination (the other issue in the licensing proceeding), and did not result in the grant or denial of the request to amend the license. *Id.* Similarly, the market dominance decision in this case did not address the issue of rate reasonableness and did not result in a ruling directly affecting CSX's rates. The court in *Benton* dismissed the petition

seeking review of the interlocutory order for want of final agency action, and its reasoning compels us to do the same here. The petitioners' mistake in *Benton* was in not challenging the Commission's final order granting the license. *Id.* at 826. In this case, however, CSX will be free at the conclusion of the adjudication to appeal the Board's final order concerning its rates (if the railroad does not prevail).

The final order rule is applied pragmatically, *Standard Oil*, 449 U.S. at 239, and here practical concerns point against judicial review. The rule "is predicated upon the perception that litigants as a group are best served by a system which prohibits piecemeal appellate consideration of rulings that may fade into insignificance" by the time proceedings conclude. *Alcoa*, 790 F.2d at 942 (citation and internal quotation marks omitted). Premature review "squanders judicial resources," since the challenging party may ultimately prevail in the adjudication and have no need to appeal. *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986). By reserving judicial review until the end of an adjudication, the court "avoids disrupting the agency's processes." *DRG*, 76 F.3d at 1214.

It would be completely contrary to these purposes for a federal court to insert itself into the middle of an ongoing adjudication under the circumstances of this case. First, we would be conducting piecemeal review that would be rendered unnecessary if CSX wins in the second phase of the adjudication. Second, we would disrupt the Board's processes and penalize it for using its expertise to select the best structure for the adjudication. The Board bifurcated the proceedings in this case at CSX's request, both in the interest of efficiency, and to allow CSX to avoid spending unnecessary time and money defending rates over which it does not have market dominance. Judicial intervention at this stage of the Board's proceedings would ensure that a bifurcated adjudication would

never be an efficient way for the agency to proceed, because it would create an additional round of appeals. The final agency action requirement is designed to prevent this sort of interference.

*Union Pacific Railroad Co. v. Surface Transportation Board*, 358 F.3d 31 (D.C. Cir. 2004), on which CSX relies, is easily distinguished. That case concerned a dispute that the parties decided to arbitrate. The parties agreed to bifurcate the proceedings between liability issues common to all claimants and individualized damages determinations. *Id.* at 33. A panel of this court held that the STB's refusal to set aside the arbitrator's decision after the first phase was final action. *Id.* at 35. This is very different from the situation that we face in this case.

The final order rule necessarily operates differently when the parties choose an alternate venue like arbitration instead of participating in a traditional agency adjudication. The Board's decision in *Union Pacific* was not one part of a larger agency decisionmaking process. Instead, it was a single-shot review by the agency of another decisionmaker. Concerns about enabling agencies to apply their expertise and avoiding any disruption to their processes are far less compelling when the agency is not the primary decisionmaker. Furthermore, the *Union Pacific* court held that the STB's decision determined rights and obligations and generated legal consequences. *Id.* at 34. Once the arbitrator found for the plaintiffs on the liability issue, it was essentially a foregone conclusion that the defendants would pay at least some damages to at least one plaintiff. *Id.* at 35. Here there is no such certainty, for the Board in this case might conclude that CSX's rates are reasonable even where it has market dominance.

Nor can CSX draw on those cases in which an agency demands compliance from a regulated entity but has not actually initiated enforcement proceedings. *See Sackett v. EPA*, 132 S. Ct. 1367 (2012) (compliance order was final action); *Ciba-Geigy*, 801 F.2d at 431 (challenge to letters requiring compliance was ripe). The order in *Sackett* marked the conclusion of the agency's decisionmaking process on the petitioners' case, and petitioners' request for a hearing was denied. *Id.* at 1372; *see also Ciba-Geigy*, 801 F.2d at 433 (EPA denied petitioner a hearing). The next step was not further adjudication, but an enforcement action in federal court. *Sackett*, 132 S. Ct. at 1373. That is not the case here. In addition, in these "comply-or-else" cases, the agency's demands have a "direct and immediate . . . effect on the day-to-day business of the parties challenging the action." *Ciba-Geigy*, 801 F.2d at 436 (citation and internal quotation marks omitted) (alteration in original). In this case, the Board has not asked CSX to "alter [its] primary conduct," and so judicial review must wait until the end of the adjudication. *Id.*

Finally, the facts here do not fall into the very narrow line of cases in which this court has held that an aggrieved party need not fully exhaust administrative remedies before seeking judicial review because the agency is pursuing a matter on which it has no right to act. *See Athlone Indus. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485 (D.C. Cir. 1983) (regulated entity could challenge agency's authority to assess civil penalties in administrative proceedings); *Atl. Richfield Co. v. Dep't of Energy*, 769 F.2d 771 (D.C. Cir. 1984) ("*Arco*") (regulated entity could challenge agency's authority to adjudicate price-control violations and to impose discovery sanctions). *Athlone* and *Arco* addressed challenges concerning whether an agency's statute granted it the power to conduct certain kinds of proceedings. Here there is no question that the Board has the statutory authority to evaluate market dominance

and rate reasonableness in adjudications, and that this matter is properly before the agency. *See* 49 U.S.C. §§ 10501, 10701, 10707. CSX merely claims that the Board incorrectly decided a threshold issue during the course of an ongoing adjudication. In the context of this case, this is insufficient to satisfy the final order rule.

**2. The Board's Alleged Adoption of a New Legislative Rule During the Course of the Ongoing Adjudication is Not a Final Order Subject to Judicial Review**

CSX argues that judicial review is appropriate even if we were to hold (as indeed we do) that the market dominance decision is not an appealable final order. CSX reasons that the Board should not have implemented a new methodology for assessing market dominance without first going through notice and comment rulemaking. Thus, according to CSX, "failure to follow notice-and-comment procedures required by the APA constitutes a completed, final injury to the parties that is subject to immediate judicial review." Pet'r's Br. at 10. This argument is nothing more than a backhanded attempt to circumvent the final order rule.

The principal premise of CSX's argument is that the new methodology and rules adopted by the Board to evaluate the evidence of market dominance "have the force of law, establish binding norms, and determine rights and obligations." Pet'r's Br. at 27 (citing *CropLife Am. v. EPA*, 329 F.3d 876 (D.C. Cir. 2003); *Gen. Elec. Co. v. EPA*, 290 F.3d 377 (D.C. Cir. 2002); *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974)). CSX thus characterizes the new methodology as a rule, rather than an unreviewable statement of agency policy. Some of what CSX says about the reviewability of "legislative rules," as distinguished from

agency policy statements, is certainly true. *See* EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW 156–63 (2d ed. 2013) (discussing "Reviewability of Agency Policy Statements and Interpretative Rules"). But CSX's argument is a non sequitur. Merely because the Board's alleged adoption of a new legislative rule without notice and comment may be subject to judicial review does not mean that the court will allow CSX to pursue an interlocutory appeal. Indeed, CSX has not cited a single decision in which this or any other appellate court has permitted a party to seek interlocutory review on the ground that an agency has allegedly adopted a new legislative rule during the course of an adjudication. This comes as no surprise because the courts would wreak havoc with the final order rule were we to subscribe to CSX's position.

After an adjudication has ended, a party is free to argue that the agency exceeded its authority or abused its discretion in adopting new principles through adjudication instead of rulemaking. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974). If an agency interprets the law in an adjudication, a party can challenge that interpretation as being inconsistent with the agency's organic statute, or with its regulations. *See, e.g.*, *NLRB v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 584 (1994) (overturning administrative decision inconsistent with governing statute); *Am. Fed'n of Gov't Emps. v. Fed. Labor Relations Auth.*, 777 F.2d 751, 758 (D.C. Cir. 1985) (overturning administrative decision inconsistent with agency regulations). And when an "agency applies [a general statement of] policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued." *Pac. Gas*, 506 F.2d at 38. In all such cases, however, if the contested agency action takes place during the course of an adjudication, judicial review comes only at the conclusion of the proceedings.

CSX's position is that the mere allegation that an agency has adopted a legislative rule during the course of an ongoing adjudication without notice and comment is sufficient to allow a party to sidestep the final order rule and require the court to rule on the merits of the party's APA claim. This is not the law. We therefore reject CSX's position.

## CONCLUSION

For the reasons set forth above, the petition for review is dismissed.

*So ordered.*