BROWN, Circuit Judge,
dissenting:
My colleagues are quick to claim we have jurisdiction to hear this motion, but I disagree. While we presumptively possess jurisdiction over “final agency action,” the Administrative Procedure Act deprives us of jurisdiction when, inter alia, “agency action is committed to agency discretion by law.” See 5 U.S.C. § 701(a)(2). The Court acknowledges EPA’s decision to grant reconsideration “is not reviewable final agency action” as it “merely begins a process that could culminate in no change to the rule.” Op. 6. The Court further claims the Clean Air Act provision at issue here “expressly links EPA’s power to stay a final rale to the two requirements for mandatory reconsideration ....” Id. at 8. Indeed it does. See 42 U.S.C. § 7607(d)(7)(B) (“Such reconsideration shall not postpone the effectiveness of the rale. The effectiveness of the rule may be stayed during such reconsideration, however, by the Administrator or the court for a period not to exceed three months.”).[1] Nevertheless, the Court *15 concludes EPA’s decision to stay the rule pending reconsideration is subject to judicial review, claiming the stay is “final agency action” “with respect to” complying with the rule. See Op. 6. It also characterizes the stay as “essentially an order delaying the rule’s effective date.” Id. at 6. But hitting the pause button is the antithesis of ending the matter. The Court presumes a certain outcome from EPA’s reconsideration, one that a stay alone gives us no basis to presume. A stay is, of course, “final” as to whether one must comply with the rule during reconsideration — just as a trial court’s evidentiary determination is “final” until the time for appeal ripens. That some agency action resolves itself does not render it “final.” If it did, every interlocutory action that leaves compliance to the discretion of the regulated party would justify judicial review. The stay is “essentially” nothing but a stay, and it does not qualify as “final agency action” under the two-part inquiry set forth by the Supreme Court.
As EPA’s stay here is “of a[n] ... interlocutory nature,” it cannot satisfy the first element of “final agency action:” consummation of the agency’s decision-making process. See Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); see also Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm’n, 324 F.3d 726, 731 (D.C. Cir. 2003) (“Agency action is considered final to the extent it imposes an obligation, denies a right, or fixes some legal relationship.”). Here, EPA’s ninety-day stay is limited to specific requirements within the rule that are among the subjects of reconsideration — requirements for fugitive emissions, pneumatic pump standards, and certification requirements for professional engineers. See Pet’r Attach. 4-5. A temporary stay facilitates reconsidering these discrete issues; it does not resolve them. This is not the kind of agency action considered “final.” Cf. Reliable, 324 F.3d at 731 (“The agency’s conduct thus far amounts to ... a statement of the agency’s intention to make a preliminary determination ... and a request for voluntary corrective action.”). The Environmental Petitioners will be able to raise their arguments regarding the alleged harms of revisiting EPA’s rule during the reconsideration process, and once again during the litigation that will surely follow EPA’s reconsideration. With these available avenues, it belies the virtue of “final agency action” to include an agency’s intermediate stay within the standard’s ambit. See id. at 733 (“So long as Reliable retains the opportunity to convince the agency that it lacks jurisdiction over Reliable’s sprinkler heads, it makes no sense for a court to intervene. It conserves both judicial and administrative resources to allow the required agency deliberative process to take place before judicial review is undertaken.”); Ciba-Geigy Corp. v. U.S. EPA, 801 F.2d 430, 436 (D.C. Cir. 1986) (“Judicial review at [this] stage improperly intrudes into the agency’s decisionmaking process. *16 It also squanders judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind.”).
The Court relies on a series of pre-Bennett cases to equate EPA’s stay with instances where this court has reviewed an agency amending or revoking a rule. See Op. 6. None of these cases are apposite.[2] And while Int’l Union, United Mine Workers of Am. v. Mine Safety & Health Admin., 823 F.2d 608 (D.C. Cir. 1987) may seem analogous, it does not involve the sort of neutral, time-limited stay involved here.[3]
In contrast to our precedent, the Court’s opinion concludes a particular administrative proceeding has innumerable final agency actions, including intermediate decisions. No authority supports this proposition. The majority contends Friedman v. FAA, 841 F.3d 537 (D.C. Cir. 2016) does, Op. 7-8, but Friedman was sui generis; it spoke only to the “specific facts presented,” a “constructive denial of Friedman’s application for a first class [medical] certificate.” 841 F.3d at 541. Here, unlike in Friedman, the agency has not placed Environmental Petitioners in an indefinite “holding pattern” preventing “any explicitly final determination.” Cf. id. at 542. Rather, EPA has authorized a time-limited stay during which it will proceed through the rule reconsideration process — a process where, as mentioned above, the Environmental Petitioners are free to voice their objections and then sue the agency if they disagree with the agency’s actions. Cf. Ciba-Geigy, 801 F.2d at 437 (finding “final agency action” when EPA’s action, unlike the stay here, “gave no indication that [its *17 position was] subject to further agency-consideration or possible modification”). This is a far cry from an agency “clearly communicating] it will not reach a determination on a petitioner’s submission ... [while] simultaneously refusing] to deny the petitioner’s submission.” Friedman, 841 F.3d at 542.
As a rule of decision, the Court’s unbounded reading of Friedman creates a peculiar backdoor: The Court insists, correctly, EPA’s decision to reconsider the rule is within the agency’s discretion. But if the stay is not, and the stay is tied up with the reconsideration authority, deeming the stay “final agency action” allows the Court to review the basis for reconsideration itself. See Op. 8. Certainly, the rule of law would benefit from the judiciary shedding its unfortunate sheepishness towards reviewing agency action. But that noble goal does not absolve us from “carefully considering] why and when we are meant to” review agency action. See AKM LLC v. Sec’y of Labor, 675 F.3d 752, 769 (D.C. Cir. 2012) (Brown, J., concurring). Yes, the “reflex of deference” can be dangerous. Id. But so is an aneurysm of activism that enlarges a doctrine by engorging judicial prerogatives to the point of rupturing the separation of powers. See Santa Monica Beach, LTD. v. Superior Court, 19 Cal.4th 952, 81 Cal.Rptr.2d 93, 968 P.2d 993, 1040 (1999) (Brown, J., dissenting) (“Judicial review is properly conceived in narrow terms. It is not a license to supersede the exercise of power by a coordinate branch which acts well within constitutional boundaries.”). If an intermediate stay is the consummation of an agency’s decision-making, we have conflated the agency preserving the status quo, i.e., forestalling the rule’s requirements in order to reconsider them, with the agency completing a course of action, i.e., ordering compliance. In my view, this is erroneous.
Turning to the second element of “final agency action,” the Court establishes nothing by asserting the stay creates obvious consequences for the regulated parties. See, e.g., Op. 7. Agency actions of various kinds, “final” or not, come with consequences. The relevant question is whether the consequences have a “legal force or practical effect” beyond “the disruptions that accompany” the agency making a decision to “initiate proceedings.” See Fed. Trade Comm’n v. Standard Oil Co. of Cal., 449 U.S. 232, 241, 243, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).
Here, EPA’s unreviewable decision to reconsider its rule is akin to an agency making “a precatory finding of [a] ‘reason to believe’ ” legal action is warranted. Cf. Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm’n, 173 F.Supp.2d 41, 44 (D.D.C. 2001) (quoting Standard Oil Co., 449 U.S. at 234, 101 S.Ct. 488). The stay — designed so EPA can devote resources to reconsidering the rule rather than enforcing it, and so industry can avoid implementing changes that reconsideration may later obviate — is subsidiary to the reconsideration itself. If “final agency action” cannot encompass the decision to reconsider the rule, “it cannot possibly encompass the ... steps that the [agency] has taken to date” to facilitate reconsideration. See id. at 44. EPA is not compelling compliance here. If a regulated entity wants to comport its conduct to the requirements of the stayed rule, it is free to do so. By issuing the stay, all the EPA has indicated it that it will not, legally or practically, enforce the rule under reconsideration. The stay’s consequences therefore do not impose legal or practical requirements on anyone — separating them from the kind of consequences encompassed by “final agency action.” Cf. Reliable, 324 F.3d at 735 (“The discovery orders in ARCO were legally binding orders, whereas here, there is no order, only the *18 possibility of Reliable having to defend itself at an enforcement hearing if Reliable does not undertake certain voluntary action, and if the agency decides to proceed against it.”).
The Court is thus in error to claim Ciba-Geigy. See Op. 7. Ciba-Geigy was a “comply-or-else” case; “the next step was not further adjudication, but an enforcement action in federal court.” CSX Transp., Inc. v. Surface Transp. Bd., 774 F.3d 25, 32 (D.C. Cir. 2014) (explaining Ciba-Geigy). Here, Environmental Petitioners are not presented with agency conduct demonstrating EPA will take no additional action. EPA’s stay does not ask anyone to alter their conduct, so “judicial review must wait.” See id. That Petitioners are anxious to see their victory implemented and impatient with delay does not make EPA’s action final. It may be annoying, disappointing, ill-advised, even unlawful, but that does not transform a stay to facilitate reconsideration into “final agency action.”
Without either element of the “final agency action” inquiry satisfied, I cannot conclude EPA’s stay falls within our jurisdictional reach. Section 7607(d)(7)(B) renders a stay a mere means to facilitate a decision we lack the authority to review. Accordingly, I would dismiss the Environmental Petitioners’ motion on the grounds that we lack jurisdiction to review EPA’s stay, and not reach the remaining issues. As the Court does otherwise, I respectfully dissent from the Court’s decision to grant the motion and vacate EPA’s stay.

. It is far from clear that designating the judiciary as an alternative forum to seek a stay, as the statute does, makes EPA action on stays subject to judicial review. But see Op. 7. The text’s obvious reading is to give private parties power to seek a stay without having to ask the agency. Given the statutory context, this makes sense; an agency may not want to reconsider its rule, let alone stay its implementation to facilitate an undesired reconsideration. By establishing the judiciary as an alternative, the statute ensures stays result from factual warrant and not simply because the agency wills one. Even if the statute could be read to authorize judicial review of agency action on stays, there is no basis to conclude *15 review extends beyond denied stays. A denied stay in this statutory context — reconsideration based on new grounds or grounds “impracticable” to raise during rulemaking — might be judicially reviewable for the same reason the denial of such reconsideration petitions are reviewable. Cf. Sendra Corp. v. Magaw, 111 F.3d 162, 166 (D.C. Cir. 1997) ("An agency's denial of a petition ... for reconsideration is not itself subject to judicial review if the petition alleges only 'material error' in the agency’s original decision. ... On the other hand, if an agency denies a petition for reconsideration alleging ‘new evidence' or 'changed circumstances,’ the agency’s denial is reviewable as a final agency action ....”). But, EPA granting a stay does not present the same risk of agency short shrift toward reconsideration. Nothing about the text or its context justifies importing a new purpose into the statute to authorize judicial review of granted stays.

. Environmental Defense Fund, Inc. v. Gorsuch, 713 F.2d 802 (D.C. Cir. 1983) holds "an agency decision which effectively suspends the implementation of important and duly promulgated standards ... constitutes rule-making subject to notice and comment Id. at 816 (citing Council of the Southern Mountains, Inc. v. Donovan, 653 F.2d 573 (D.C.Cir.1981) and Nat. Res. Def. Council, Inc. v. EPA, 683 F.2d 752 (3d Cir. 1982) as "standing] for the [same] proposition”). It is not credible to suggest that, absent submitting its stay pending reconsideration through notice and comment rulemaking, EPA's action is ultra vires and thereby subject to judicial review.

. The question in Int’l Union was the following: Whether an administrative law judge could order the Mine Safety & Health Administration to grant a party "interim relief” from a mine-safety standard while that party awaited a decision on whether it could receive a "mine-specific exemption from [the] mandatory standard.” See 823 F.2d at 610-12. Exemptions were only granted when the agency determined "an alternative method” to the mandatory standard could "guarantee no less than the same measure of protection” afforded by the standard "at all times.” See id. at 611. But subjecting a particular regulated entity to a different compliance standard via an exemption is not the same as staying a rule pending its reconsideration — that exemption alters the status quo (the mandatory rule) as to one party, while here, staying the rule preserves the status quo (no rule in effect) as to everyone. Further, in the exemption context, the "interim relief” is akin to an injunction; an ALJ is ordering the agency not to enforce the existing standard as to the exemption-petitioning party, and ordering the petitioning party to comply with an interim standard. See id. at 612-13. In the context of this stay, however, EPA is not ordering anyone to do anything. The agency is merely announcing that it has decided to allocate its resources' towards reconsideration rather than enforcing the rule. Despite the Court’s contrary intimations, enjoining conduct is not the same action as issuing a stay. Cf. Nken v. Holder, 556 U.S. 418, 428-29, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) ("A stay pending appeal certainly has some functional overlap with an injunction .... Both can have the practical effect of preventing some action before the legality of that action has been conclusively determined. But a stay achieves this result by temporarily suspending the source of authority to act — the order or judgment in question — not by directing an actor’s conduct.”).