# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 8, 2018        Decided April 27, 2018

No. 17-5074

ARCH COAL, INC.,
APPELLANT

v.

R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF LABOR AND DEPARTMENT OF LABOR,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00669)

*Mark E. Solomons* argued the cause and filed the briefs for appellant. With him on the briefs was *Laura Metcoff Klaus*.

*Daniel J. Aguilar*, Attorney, U.S. Department of Justice, argued the cause for federal appellees. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Mark B. Stern*, Attorney.

Before: MILLETT and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Arch Coal, Inc. ("Arch") appeals from an order of the District Court dismissing its complaint for want of jurisdiction. Arch's complaint seeks an injunction and declaratory relief to block the Department of Labor ("Department") from pursuing administrative actions to determine whether the company is obligated to pay benefits to certain of its former employees under the Black Lung Benefits Act ("BLBA" or "Act"), 30 U.S.C. §§ 901–45 (2012). The District Court dismissed the complaint on the ground that the BLBA "assigns exclusive jurisdiction" over Arch's challenges "to the Department's administrative process and then the relevant federal court of appeals." *Arch Coal, Inc. v. Hugler*, 242 F. Supp. 3d 13, 18 (D.D.C. 2017). We agree and therefore affirm the judgment of the District Court.

The BLBA grants coal miners the right to monthly benefits payments from a former employer in the event they suffer from black lung disease as a result of employment. The Department sends a "notice of claim" to coal mine operators who are potentially liable for benefits payments under the Act. *See* 33 U.S.C. § 919(b) (2012) (incorporated by 30 U.S.C. § 932(a)); 20 C.F.R. § 725.407 (2017). A potentially responsible operator may contest its liability before a District Director within the agency, 20 C.F.R. § 725.408 (2017), request a formal hearing before an administrative law judge ("ALJ"), *id.* §§ 725.419(a), 725.450–725.480, and receive review of the ALJ's decision before the Benefits Review Board ("Board"), 33 U.S.C. § 921(b)(3) (2012) (incorporated by 30 U.S.C. § 932(a)); 20 C.F.R. § 725.481 (2017). Final orders of the Board may then be appealed to a U.S. court of appeals. 33 U.S.C. § 921(c).

On November 12, 2015, the Department issued a bulletin to its staff, Bulletin No. 16-01 ("Bulletin"), instructing District Directors to send notices of claims to Arch for certain black lung benefits claims filed against a company that had acquired

Arch's BLBA liabilities. Arch then brought this action in the District Court seeking to enjoin the administrative proceedings. Arch alleged that it was not liable for the payments under the BLBA and that the Bulletin violated the Administrative Procedure Act ("APA") as a legislative "rule" published without notice and comment. The District Court concluded that it lacked subject matter jurisdiction over these claims.

The BLBA's comprehensive scheme of administrative review, followed by judicial review in a court of appeals, makes it clear that Congress implicitly precluded district court jurisdiction over the claims to which the BLBA applies. *See, e.g.*, *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207–09 (1994); *Jarkesy v. SEC*, 803 F.3d 9, 16–17 (D.C. Cir. 2015). We therefore agree with our sister circuits that "the scheme of review established by Congress for determinations of black lung disability benefits was intended to be exclusive." *Compensation Dep't of Dist. Five, United Mine Workers of Am. v. Marshall*, 667 F.2d 336, 340 (3d Cir. 1981); *see also Louisville & Nashville R.R. Co. v. Donovan*, 713 F.2d 1243 (6th Cir. 1983). Accordingly, Arch must exhaust its administrative remedies and secure a final order from the Board before it may seek review from this court.

## I. BACKGROUND

### A. Statutory and Regulatory Background

The BLBA imposes liability on coal mine operators for payment of monthly benefits to coal miners who contract pneumoconiosis, or black lung disease, from their employment in the mines. *See* 30 U.S.C. §§ 922(a), 932(c). In order for an operator to be held liable, it must have employed the miner for at least one year and be "capable of assuming its liability for a claim." 20 C.F.R. § 725.494(c), (e) (2017). If the operator that

most recently employed the miner is not liable, the miner's next most recent employing operator may be found responsible. *Id.* § 725.495(a)(3).

Congress created a comprehensive administrative scheme to adjudicate benefits claims under the Act. *See* 30 U.S.C. § 932(a) (incorporating the procedures outlined in the Longshore and Harbor Workers' Compensation Act into the BLBA). The process begins when a disabled coal miner or a surviving dependent of a miner who died of black lung disease files a claim with the District Director in the Department of Labor's Office of Workers' Compensation Programs. *See* 20 C.F.R. §§ 725.303, 401 (2017). The District Director investigates the claim to determine whether the claimant is eligible for benefits and which employer, if any, is potentially responsible under the BLBA. *See id.* §§ 725.401–423. If the claimant is eligible for BLBA benefits but a potentially liable operator cannot be identified, the benefits are paid from the federally administered Black Lung Disability Trust Fund, which is financed by a tax on coal. *See* 30 U.S.C. § 934; 26 U.S.C. § 9501(d)(1)(B) (2012). But if the District Director identifies a potentially liable operator, the District Director sends that operator a "notice of claim." *See* 33 U.S.C. § 919(b) (incorporated by 30 U.S.C. § 932(a)); 20 C.F.R. § 725.407(b).

Once the operator receives a notice of claim, it becomes a party to the administrative proceedings. *See* 20 C.F.R. § 725.407(b). The operator may then contest its identification as a potentially liable operator before the District Director, *id.* § 725.408(a)(1)–(2), and submit documentary evidence in support of its position, *id.* § 725.408(b)(1). The District Director may conduct an informal conference with the parties, at which the parties have the right to representation. *Id.* § 725.416. The District Director may also "permit a reasonable time for the submission of additional evidence following a

conference." *Id.* § 725.417(b). "Within 20 days after the termination of all conference proceedings, the district director shall prepare and send to the parties a proposed decision and order" designating the responsible operator liable for the payment of benefits. *Id.* § 725.417(c). That document "must contain findings of fact and conclusions of law" in support of any designation of a responsible operator. *Id.* § 725.418(b).

Either party may appeal the District Director's decision and request a formal hearing before an ALJ within thirty days. *Id.* §§ 725.419(d), 725.450–725.480 (detailing hearing procedures before the ALJ); 33 U.S.C. § 919(d). The ALJ must make a de novo determination of the operator's liability after a "fair hearing" in which the parties and witnesses may testify; and the ALJ "may entertain the objections of any party to the evidence submitted." 20 C.F.R. § 725.455(a)–(c) (2017). The ALJ's decision may be appealed to the Board, which is "authorized to hear and determine appeals raising a substantial question of law or fact." 33 U.S.C. § 921(b)(3); 20 C.F.R. § 725.481. Once the Board issues a final decision, an aggrieved party may obtain judicial review of the "final order . . . in the United States court of appeals for the circuit in which the injury occurred." 33 U.S.C. § 921(c); *see also* 20 C.F.R. § 725.482 (2017).

### B. Factual and Procedural History

Arch is a coal mining company that was formed in 1997. The following year, Arch received the Department's authorization to self-insure against future BLBA liabilities. On December 31, 2005, Arch sold three of its subsidiary coal mining companies to Magnum Coal Company ("Magnum"). Arch alleges that as part of that sale, Magnum agreed to assume the BLBA liabilities of the three purchased subsidiary companies. In 2008, Magnum was acquired by Patriot Coal ("Patriot").

Patriot declared bankruptcy in May 2015. The bankruptcy court approved the sale of Patriot's coal-mining operations, including Arch's three former subsidiaries, to other companies. That sale did not transfer Patriot's liability for BLBA claims.

In response to Patriot's bankruptcy, the Department's Office of Workers' Compensation Programs issued Bulletin No. 16-01 to its staff. *See* U.S. Dep't of Labor, BLBA Bulletin No. 16-01 (Nov. 12, 2015), *available at* https://www.dol.gov/owcp/dcmwc/blba/indexes/BL16.01OC R.pdf. The Bulletin's purpose was "[t]o provide guidance for district office staff in adjudicating claims in which the miner's last coal-mine employment of at least one year was with one of the 50 subsidiary companies that have been affected by the Patriot Coal Corporation bankruptcy." *Id.* at 1. With respect to newly filed claims against the former Arch subsidiaries, the Bulletin instructs staff to "[d]etermine whether the claim is covered by Arch Coal's self-insurance or an Arch Coal commercial insurance policy." *Id.* at 3. "If commercial coverage can be identified," notice of the claim must be sent "to the appropriate carrier." *Id.* Where "no commercial insurance can be identified, and the miner's employment falls within a period of Arch Coal's self-insurance," which "generally requires that the miner last worked for the subsidiary before January 1, 2006," notice of the claim must be sent to Arch Coal. *See id.*

Following distribution of the Bulletin, District Directors sent Arch notices of claims. The notices reflect the Department's initial determination that Arch is potentially liable for the claims of miners who worked for Arch during its period of self-insurance. In April 2016, Arch filed this action in District Court, seeking declaratory relief and an injunction barring the Department from sending Arch notices of claims

pursuant to the Bulletin, Compl. 22 ¶ 97, and from "imposing on Arch Coal, Patriot's liability for the black lung claims," *id.* at 18 ¶ 72. The Complaint alleges that the Bulletin was a substantive "rule" and, as such, it should have been subject to notice and comment under 5 U.S.C. § 553 of the APA and it could not be retroactive. Compl. 16–19 ¶¶ 60–79. The Complaint additionally alleges that the Bulletin violates the BLBA and its implementing regulations by imposing liability on "a pass-through owner," and by not first "apply[ing] Patriot's self-insurance" assets to the claims. *Id.* at 20–22 ¶¶ 80–97.

The Department moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and (6), for lack of subject matter jurisdiction and for failing to state a claim upon which relief could be granted. On March 16, 2017, the District Court granted the motion to dismiss for lack of jurisdiction, holding that the BLBA "assigns exclusive jurisdiction" over Arch's challenges "to the Department's administrative process and then the relevant federal court of appeals." *Arch Coal*, 242 F. Supp. 3d at 18–19. Arch then filed an appeal with this court.

## II.  ANALYSIS

### A.  Standard of Review

"We review *de novo* a dismissal for lack of subject matter jurisdiction." *United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 471 (D.C. Cir. 2016). In so doing, we "must accept the factual allegations in the complaint as true." *Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 871 (D.C. Cir. 2002).

### B.  Jurisdiction

As we explained in *Jarkesy*:

Litigants generally may seek review of agency action in district court under any applicable jurisdictional grant.

If a special statutory review scheme exists, however, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies. . . .

Our analysis proceeds in accordance with the two-part approach set forth in *Thunder Basin Coal Co. v. Reich*. Under *Thunder Basin*'s framework, courts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure.

803 F.3d at 15 (citations and internal quotation marks omitted). In this case, both considerations support our judgment that Congress intended the BLBA's statutory scheme to be exclusive with respect to the claims to which the statute applies.

### 1. *Exclusivity of the Statutory Scheme*

The "fairly discernible" test is easily satisfied in this case. The terms of the BLBA make it clear that Congress intended mine operators to contest their liability for benefits payments exclusively through the statutory review scheme. "Generally, when Congress creates procedures designed to permit agency

expertise to be brought to bear on particular problems, those procedures are to be exclusive." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (citation and internal quotation marks omitted). As described above, the BLBA establishes exactly such a detailed and comprehensive process for adjudicating black lung benefits claims. *See* 33 U.S.C. §§ 919, 921.

In all relevant respects, the BLBA resembles other statutory schemes held to preclude district court jurisdiction. In *Thunder Basin*, a coal company sought injunctive relief in district court for alleged statutory and constitutional violations emanating from an anticipated enforcement proceeding under the Federal Mine Safety and Health Amendments Act of 1977 ("Mine Act"). 510 U.S. at 204–05. Under the Mine Act's scheme, a party sanctioned by the Mine Safety and Health Administration may bring a challenge before an ALJ, appeal the ALJ's decision to a Commission within the agency, and appeal the Commission's final order to a court of appeals. *Id.* at 207–08. "The [Mine] Act expressly authorizes district court jurisdiction in only two provisions," which allow the agency to seek enforcement orders in court. *Id.* at 209. Mine operators have no "corresponding right" to district court jurisdiction. *Id.* The Supreme Court concluded that the detailed statutory scheme "demonstrate[d] that Congress intended to preclude [the plaintiff's] challenges." *Id.* at 208; *see also Elgin*, 567 U.S. at 5–6 (holding that the Civil Service Reform Act's scheme for reviewing personnel actions – involving a hearing before the agency, review by a board within the agency, and appeal to the Federal Circuit – was exclusive of district court jurisdiction); *Jarkesy*, 803 F.3d at 16 (involving similar judicial review provisions under the Securities Exchange Act and holding that they indicated exclusivity); *Sturm, Ruger & Co.*, 300 F.3d at 871–73 (holding the same with respect to the Occupational

Safety and Health Act's scheme of administrative and judicial review).

The BLBA cannot be distinguished from the foregoing statutory schemes. Under the BLBA, mine operators may challenge adverse liability decisions before an ALJ and obtain review of the ALJ's decision by a Board established by the Act within the agency for that purpose. Only after the Board has issued a final order may an adversely affected party obtain judicial review, and that review is available only in a U.S. court of appeals. *See* 33 U.S.C. § 921(c). Moreover, the BLBA, like the Mine Act, expressly authorizes district court jurisdiction in only two narrow circumstances, each involving enforcement of compensation orders. *See* 33 U.S.C. § 921(d) (allowing a successful claimant or the deputy commissioner making the order to bring an action in district court to enforce an award of disability benefits); 30 U.S.C. § 934(b)(4)(A) (allowing the Secretary to sue in district court to enforce a lien against an operator who fails to make payments to the Black Lung Disability Trust Fund). By its terms, the BLBA's "special statutory review scheme" leaves no role for district court review of the Department's run-of-the-mill black lung benefits determinations. Therefore, mine operators seeking to contest their liability for black lung benefits claims must exhaust the administrative remedies provided in the statute before seeking review in a U.S. court of appeals.

### 2. *Arch's Claims Are of the Type that Congress Intended to Be Reviewed Within the BLBA Statutory Structure*

Arch argues that even if the BLBA is exclusive with respect to claims that fall within its compass, the claims at issue in this case are not of the type that Congress intended to be reviewed within the BLBA's statutory structure. We disagree.

A claim will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim is wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency. *Free Enter.*, 561 U.S. at 489; *Thunder Basin*, 510 U.S. at 212–13. These exceptions are not applied pursuant to any "strict mathematical formula." *Jarkesy*, 803 F.3d at 17. Rather, the exceptions reflect "general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Id*.

In its complaint, Arch attempted to fit its claims within an exception to the *Thunder Basin* rule, arguing that it should not be forced to defend the compensation claims at issue because, for a number of reasons, it is not liable for them as a matter of law under the BLBA. This argument obviously fails because operator challenges to potential liability under the BLBA are quintessentially the type of claims that are within the exclusive compass of the BLBA's statutory scheme. They fall squarely within the Department's authority and expertise to assess liability for benefits payments under the BLBA. Indeed, benefit liability disputes "arise from actions [taken by the Department] in the course of" the administrative enforcement scheme, *Jarkesy*, 803 F.3d at 23, and meaningful judicial review is available in the courts of appeals, *see* 33 U.S.C. § 921(c).

On appeal, Arch argues that the disputed Bulletin is a substantive "rule" that was issued without required procedures and with impermissible retroactive effects. Therefore, Arch maintains that its claims may be heard in the District Court pursuant to *National Mining Association v. Department of Labor*, 292 F.3d 849 (D.C. Cir. 2002) (per curiam). In that decision, the court held that the District Court had jurisdiction

over a challenge to regulations issued pursuant to notice-and-comment rule making by the Secretary of Labor under the BLBA. *Nat'l Mining*, 292 F.3d at 858–59. The decision in *National Mining* is plainly inapposite.

*National Mining* distinguished the claims before it from those at issue in two circuit court decisions, both of which had held that the BLBA's statutory review scheme precluded district court jurisdiction. *See Louisville & Nashville R.R.*, 713 F.2d at 1244 (remanding with instructions to vacate District Court's award of injunction preventing Secretary from extending coverage of the BLBA to railroad employees on the basis of Department's guidelines); *Compensation Dep't*, 667 F.2d at 340 (holding District Court lacked jurisdiction over claim that Department's policy for reviewing claimants' X-ray evidence violated the BLBA). The *National Mining* court explained that the plaintiffs in the two cited cases did not challenge "a formal regulation, as is true in our case," but had instead attempted "to short-circuit the administrative process by challenging a Department enforcement position in a district court." *Nat'l Mining*, 292 F.3d at 858; *see also id.* at 857 ("It is important to note that [*Thunder Basin*] did not involve a regulation."). By contrast, the plaintiffs in *National Mining* brought "a direct attack on the validity of a formal regulation, issued pursuant to notice-and-comment rulemaking." *Sturm, Ruger & Co.*, 300 F.3d at 875 (citation and internal quotation marks omitted).

If anything, the decision in *National Mining* clearly supports our judgment in this case. For example, the court pointed out that in a case of the sort that Arch seeks to pursue here, "there [is] no reason to believe that [the operator's] legal position, if correct, could not be fully remedied through review in the Court of Appeals." *Nat'l Mining*, 292 F.3d at 858.

The simple point here is that Arch's challenges to the Bulletin are the exact sort of claims that *National Mining* took pains to distinguish from its holding. Arch requests district court relief that would circumvent the statutory scheme based on objections to an enforcement policy, not a legislative "rule." *See* 5 U.S.C. § 551(4) (2012). Unlike the "rule" that fell outside the BLBA's administrative scheme in *National Mining*, the disputed Bulletin in this case does not "alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000) (quoting *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994)) (describing "rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(3)(A) (2012), which are exempt from notice-and-comment rule making requirements). To the contrary, the Bulletin does not impose any liability on Arch under the BLBA or dispose of any benefits claim on the merits. It only requires District Directors to initiate proceedings concerning Arch's potential responsibility for BLBA claims related to Patriot.

It is well understood that the notice-and-comment provisions of section 553 of the APA do not apply to agency bulletins, policy statements, directives, guidances, opinion letters, press releases, advisories, warnings, or manuals that do not have the force of law. *See* EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW: REVIEW OF DISTRICT COURT DECISIONS AND AGENCY ACTIONS 196–97 (3d ed. 2018). Indeed, such actions normally are not subject to judicial review unless the agency relies on the policy to support an agency action in a particular case. *Id.* at 198–99.

All of the matters with respect to which Arch complains are related to actions that the Department has taken pursuant to the BLBA's statutory scheme. Therefore, Arch is required to

exhaust its administrative remedies and secure a final order from the Board before it may seek review from this court. Arch's challenge to the Bulletin in the District Court surely was not "wholly collateral" to the BLBA's review scheme. Rather, the suit in District Court was an attempt by Arch to jump the gun and make an end run around the BLBA's statutory scheme. *See Sturm, Ruger & Co.*, 300 F.3d at 876 ("Indeed, the company is attempting to end the [statutory review] process altogether: its complaint seeks an injunction . . . that would terminate the [currently pending] proceeding.").

Arch's counsel conceded at oral argument before this court that the company will be able to raise its objections to the Bulletin and any enforcement actions taken against it during the course of the administrative process. *See* Oral Arg. Recording 9:29–10:13. Counsel also acknowledged that the company may appeal to a court of appeals to contest any adverse final order issued by the Board. *Id.* In fact, while this appeal was pending, Arch raised its primary objections in ongoing administrative proceedings before the Department. *See Creech v. Apogee Coal Co.*, Case No. 2016-BLA-06034, Arch Coal's Mot. for Summ. Decision on Responsible Party Issue (Oct. 2, 2017), at 5. Arch would prefer to follow a different course in challenging the Department's pursuit of enforcement claims, *i.e.*, by seeking injunctive and declaratory relief in the District Court. It has no such option under the law, however.

Arch maintains that judicial review will not be meaningful because the Department will not afford it adequate discovery to develop its claims during the administrative proceedings. This argument is premature. Arch is entitled to reasonable discovery before the Department to the full extent allowed by the BLBA and its implementing regulations. *See* 29 C.F.R. §§ 18.10(a), 18.51(a) (2017). A mine operator may introduce

"evidence relevant to [its] liability" in the BLBA proceedings, 20 C.F.R. § 725.410(b); *see also id.* §§ 725.411–17, 725.450–58, including through depositions or interrogatories, *id.* § 725.458. And an Administrative Law Judge is authorized to "[c]ompel the production of documents and appearance of witnesses by the issuance of subpoenas." 20 C.F.R. § 725.351. If Arch appeals an ALJ's orders denying discovery or refusing to compel the appearance of witnesses as legally erroneous or an abuse of discretion, the Board may vacate those orders and remand for further proceedings. *See id.* § 802.301(a). Once Arch reaches the court of appeals, it will have access to the full administrative record. And "should the record in the administrative proceeding prove inadequate to the court of appeals . . . that court always has the option of remanding to the agency for further factual development." *Jarkesy*, 803 F.3d at 22 (citation and internal quotation marks omitted). If the Department violates any of Arch's statutory discovery rights during the administrative review process, and that process results in a final order, Arch will be entitled to judicial review before a U.S. court of appeals.

## C.    Finality

Finally, Arch asserts that "the Department's allocation of Patriot's self-insurance and bankruptcy assets is final agency action not subject to adjudication in the claims process." Arch Br. 37. In other words, Arch seems to assume that the Department has disposed of some matters on the merits and, therefore, it is entitled to review now. The Department responds that the company is simply wrong on this point because "Arch is fully able to raise its claims through the Black Lung Act's statutory review scheme, and its claims will be meaningfully considered through that process." Department Br. 28. The record supports the Department on this point. The Department also points out that there is nothing for this court

to review on the merits because "Arch has not challenged final agency action as required by 5 U.S.C. § 704." *Id.* We agree.

The Bulletin is not a final agency action because it does not reflect "the consummation of the agency's decisionmaking process" and it does not offer a decision "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and internal quotation marks omitted). The Bulletin merely instructs District Directors to issue notices of claims making Arch a party to administrative proceedings and thereby initiate the process by which Arch's obligations under the BLBA eventually will be determined.

"It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding." *CSX Transp., Inc. v. Surface Transp. Bd.*, 774 F.3d 25, 30 (D.C. Cir. 2014) (quoting *Aluminum Co. of Am. v. United States*, 790 F.2d 938, 941 (D.C. Cir. 1986)); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241 (1980) (holding that the issuance of an administrative complaint is not final agency action because a complaint is "not a definitive statement of position" but instead a "threshold determination that further inquiry is warranted").

Arch argues that the inconvenience of having to defend a claim on the merits should render its designation as a potentially responsible operator reviewable. But the Supreme Court's decision in *Standard Oil* rejected this exact argument. *See Standard Oil*, 449 U.S. at 242 (a party's "burden of responding to the charges made against it" before an agency "is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action").

Nor does Arch's mere claim that the Bulletin is an improperly adopted "rule" establish any exception to the final order rule. We have held that "[t]his is a matter that can be raised by [a party] if it elects to appeal the Board's final decision at the conclusion of the adjudication." *CSX*, 774 F.3d at 28. Were the courts to "permit[] a party to seek interlocutory review on the ground that an agency has allegedly adopted a new legislative rule during the course of an adjudication . . . [it] would wreak havoc with the final order rule." *Id.* at 33.

## III. CONCLUSION

For the reasons set forth above, we affirm the District Court's dismissal of Arch's complaint.