RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0162p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

APOGEE COAL COMPANY, LLC; ARCH COAL, INC.,

                                *Petitioners*,

    *v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; DAVID M. HOWARD,

                                *Respondents*.

                                            No. 23-3332

─────────────

On Petition for Review from the Benefits Review Board.
No. 20-0229 BLA.

Decided and Filed:  August 5, 2024

Before:  GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  Mark E. Solomons, Dominic E. Draye, Michael A. Pusateri, GREENBERG TRAURIG, LLP, Washington, D.C., for Petitioners.  Sarah M. Hurley, Sean G. Bajkowski, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Brad A. Austion, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for Respondent David M. Howard.

─────────────

## OPINION

─────────────

JANE B. STRANCH, Circuit Judge.  This petition concerns Arch Resources and Apogee Coal Company's challenge of Black Lung Benefits Act (BLBA) liability for a claim submitted by David Howard.  Howard mined from 1978 to 1997, and his last employer was Apogee Coal

(at that time, owned and self-insured by Arch). The parties, referred to collectively as "Arch," do not contest Howard's entitlement to benefits for legal pneumoconiosis, but do dispute being identified as the liable insurer on Howard's claim. Petitioners ask this court to review the Benefits Review Board's decision affirming the Administrative Law Judge's finding that Arch was the liable insurer for Howard's benefits claim under the BLBA. Arch likewise asks this court to grant its motion to supplement the administrative record on appeal. For the reasons stated below, we **DENY** the petition for review and Arch's motion.

## I.  BACKGROUND

### A.  The Black Lung Benefits Act

The Black Lung Benefits Act provides benefits to miners suffering from pneumoconiosis, a lung disease caused by prolonged exposure to coal dust. *See* 30 U.S.C. §§ 901(a), 922. As an administrative act providing employment injury benefits, it incorporates the Longshore and Harbor Workers' Compensation Act (the "Longshore Act"), *see* 30 U.S.C. § 932(a), which, in turn, incorporates the Administrative Procedure Act (APA). *Dir., OWCP v. Greenwich Collieries*, 512 U.S. 267, 271 (1994). BLBA hearings are to be conducted in accordance with the requirements of both the Longshore Act and the APA, which vest Administrative Law Judges with the power to hold hearings, make credibility judgments, and award benefits. *See* 33 U.S.C. §§ 919(d), 927.

Operating within the APA and Longshore Act frameworks, the BLBA "ensure[s] that coal mine operators are liable 'to the maximum extent feasible' for awarded claims" by implementing a specific, sequential process for determining a liable operator and adjudicating the merits of a claim. *Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 313 (6th Cir. 2014) (quoting *Dir., OWCP v. Oglebay Norton Co.,* 877 F.2d 1300, 1304 (6th Cir. 1989)). The process is triggered when a miner files a claim. That claim goes to a district director, who "is responsible for identifying those operators that are potentially liable and for issuing an initial order designating the responsible operator." *Id.* The district director must then "investigate whether any operator may be held liable for the payment of benefits" and notify any potentially liable parties through a Notice of Claim. 20 C.F.R. §§ 725.407, .495. Under the BLBA, a miner's last

employer is presumed "capable of assuming its liability" for BLBA claims if it either obtained commercial insurance or was self-insured "during the period in which the miner was last employed by the operator, provided that the operator" either still qualifies as a self-insurer or has provided a security deposit "sufficient to secure the payment of benefits in the event the claim is awarded." *Id.* § 725.494. A district director may presume an operator's ability to pay so long as that operator was the claimant's last mining employer. *See id.* § 725.495(d). If the operator contests liability, as Arch does, then it bears the burden of proving that it is not liable. *See id.* §§ 725.103, .408(a). The operator has 90 days from the date it receives the Notice of Claim to submit any documentary evidence that may show it was not properly identified. *Id.* § 725.408(b).

A district director then issues a Schedule for Submission of Additional Evidence (SSAE) including "the district director's designation of a responsible operator liable for the payment of benefits." *Id.* § 725.410(a)(3). The SSAE gives the parties, including the "designated responsible operator," another "60 days within which to submit additional evidence." *Id.* at § 725.410(b). The SSAE provides the last opportunity for an operator to submit evidence contesting its liability, absent extraordinary circumstances. *See id.* §§ 725.456(b)(1), .457(c)(1). This is because following the SSAE period, a district director issues a Proposed Decision and Order (PDO) for the claim. *Id.* § 725.418. The PDO serves as the final designation of a liable operator, *see id.* § 725.418(d), and if an Administrative Law Judge (ALJ) later finds that the operator was improperly identified, a different operator may not be specified and any benefits will be awarded from the federally administered Black Lung Disability Trust Fund. *See* Final Rule, 65 Fed. Reg. 79920, 79990 ¶ (b) (Dec. 20, 2000). Once a PDO is issued, an ALJ takes over the claim—at which point no further evidence contesting liability may be submitted unless the operator demonstrates extraordinary circumstances warranting admission. 20 C.F.R. §§ 725.456(b)(1), .457(c)(1).[1]

---

[1]We refer to the BLBA regulations that specifically relate to the process of putting forth evidence to contest liability before the district director (or, in the presence of extraordinary circumstances, to the ALJ) as "liability evidence rules." *See* 20 C.F.R. §§ 725.408; 725.410(a)-(b); 725.414(b)-(d); 725.456; 725.457.

The ALJ ultimately determines the award of benefits on a BLBA claim. The BLBA provides these benefits from one of two sources: 1) the Black Lung Disability Trust Fund, a federally administered trust fund financed by taxes on coal, or 2) the private insurance of mine operators. *See id*. §§ 725.490, .494(e). Operator insurance comes in two forms: self-insurance, (i.e., operators covering their own costs under a process regulated by DOL), or commercial insurance (i.e., insurance purchased through traditional insurance carriers). *Id.* § 726.1. An operator may appeal to the Benefits Review Board to contest the award of benefits; upon affirmance, an operator may then petition this court for review. *Id.* §§ 725.481-.482.

**B. Proceedings Below**

After 17 years of mining, David Howard retired from his last employer, Apogee Coal Company. On his last day of work—February 27, 1997—Apogee was self-insured through its owner, Arch Resources, formerly known as Arch Coal. Then, in 2005, Arch sold Apogee and its federal black lung liabilities to Magnum Coal Company. These interests were transferred again when Patriot Coal Company purchased Magnum and its liabilities in 2008. So, when Howard filed for benefits in 2014, the District Director investigating Howard's claim identified Apogee, self-insured through Patriot, as the potentially liable operator and issued a Notice of Claim naming it as such. The Department of Labor (DOL) then named Patriot as the presumptive insurer of Howard's claim on the SSAE issued on August 25, 2015.

On October 9, 2015, Patriot was dissolved in bankruptcy. U.S. Dep't of Labor, BLBA Bulletin No. 16-01, 1 (2015). The following month, the DOL issued Bulletin 16-01 (the "Bulletin"), instructing that Arch should be notified as the liable insurer for Patriot's "claims pending before the District Director" that originally fell under Arch's previous self-insurance— regardless of its later transfers. *Id.* at 3-4.

Howard's claim fell under the Bulletin's guidance because Arch was Apogee's self-insurer on Howard's last day of work with Apogee. So, on December 8, 2015, the District Director issued a second Notice of Claim, this time naming Arch as the liable insurer. Later, on March 17, 2016, the District Director issued an SSAE similarly naming Arch as Apogee's insurer. Arch responded by submitting a CM-2970(a) form to the District Director contesting its

designation as a liable party in Howard's claim. Arch, however, failed to submit or request evidence and failed to name any liability witnesses. Arch's deadline to submit evidence passed on May 16, 2016. With no evidence contradicting Arch's assignment of liability, the District Director issued a PDO ordering Howard's benefits to be paid from Arch's self-insurance.[2] The matter was assigned to an ALJ, and Arch filed motions to hold Howard's case in abeyance pending collateral litigation and to extend the discovery period. Both motions were denied.

While Arch was contesting its liability for Howard's claim in this case, it filed a suit in the U.S. District Court for the District of Columbia on April 8, 2016 (the "D.C. case"), seeking injunctive and declaratory relief from the Bulletin. The district court dismissed that suit for lack of jurisdiction on March 16, 2017, and Arch appealed. *See Arch Coal, Inc. v. Hugler*, 242 F. Supp. 3d 13 (D.D.C. 2017); *Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018). On April 27, 2018, the D.C. Circuit affirmed the dismissal of Arch's case, explaining that Arch was "required to exhaust its administrative remedies and secure a final order from the [Benefits Review] Board" regarding its challenge to the Bulletin before seeking review in the court of appeals. *Acosta*, 888 F.3d at 501, 503. It also noted that during those administrative proceedings, Arch would be "entitled to reasonable discovery before the Department to the full extent allowed by the BLBA and its implementing regulations." *Id.* at 502.

On April 29, 2019, over a year after the ALJ's denials of Arch's discovery motions in Howard's case and the D.C. Circuit's resolution of the D.C. case, Arch requested subpoenas from the ALJ in Howard's case and served the DOL with written discovery requests. Arch alleged that this discovery would prove "the Bulletin's retroactive and arbitrary departure from established self-insurance principles." The ALJ denied Arch's subpoena requests.

On June 19, 2019, Arch moved to transfer liability to the Black Lung Disability Trust Fund, and the ALJ denied the motion, then named Arch as the insurer on Howard's awarded

---

[2]The PDO lists Arch in its designation of certification but at a single place in the PDO cites Patriot as the self-insuring carrier. While we agree with the ALJ that this was apparently an error (as the mention of Patriot references the original notice of claim rather than the operable notice of claim), the error is irrelevant to our review due to the PDO's nonbinding effect.

benefits on February 25, 2020. Arch appealed to the Board, and the Board affirmed. Arch timely petitioned this court for review.

On petition to this court, the parties submitted a joint appendix containing the record on appeal. Arch separately moved to supplement the appellate record with evidence not considered below, including public records, non-public documents, and documents from claims unrelated to Howard's. We consider Arch's petition for review and its motion to supplement below.

## II. ANALYSIS

Arch contends that it is not liable for Howard's claim arising from his employment with Apogee. The ALJ and the Board rejected this argument and explained that Arch failed to timely submit evidence to the District Director after noting that it contested liability. On petition to this court, Arch moves to supplement the appellate record, challenges the evidentiary procedures applied below, and disputes three elements of the Board's decision on the merits. Because evidence supporting Arch's arguments is critical to the remainder of the appeal, we first consider its request to supplement the record and its evidentiary challenges. After determining the scope of the evidence properly before this court, we address Arch's arguments on the merits.

### A. Motion to Supplement the Administrative Record on Appeal

Arch failed to submit evidence to the District Director and the ALJ denied its request to submit evidence late because Arch did not meet its burden to show extraordinary circumstances. *See* 20 C.F.R. §§ 725.414(c)-(d), .457. Now, Arch requests that we allow it to "expand" the record before our court.[3]

Federal Rule of Appellate Procedure 16(b) provides that "parties may at any time, by stipulation, supply any omission from the record or correct a misstatement, or the court may so direct. If necessary, the court may direct that a supplemental record be prepared and filed." We may supplement the administrative record in circumstances such as "when an agency has

---

[3]Arch moved under "Federal Rule[s] of Appellate Procedure 10 [and] 28" to supplement the record on appeal. It also cited "Circuit Rules 16, 32"—but Circuit Rule 16 does not exist in the Sixth Circuit, and Rule 32 merely governs the form of briefs. *See* 6 Cir. R. 16, 32. Under the law of our Circuit, we construe Arch's motion as a Federal Rule of Appellate Procedure 16(b) motion to supplement the administrative record.

deliberately or negligently excluded certain documents from the record, or when a court needs certain 'background' information to determine whether the agency has considered all relevant factors." *Latin Ams. for Social & Econ. Dev. v. Adm'r of the Fed. Highway Admin.*, 756 F.3d 447, 465 (6th Cir. 2014) (citation omitted). But "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Arch does not allege that the supplementation corrects a mistake or omission below. *See* Fed. R. App. P. 16(b). And Arch's motion does not provide any justification for its delay; it merely argues that this case is complex with far-reaching effects, and that many of the sources it seeks to introduce are either public records or evidence explicitly excluded by the ALJ. Arch's first point is unavailing, as many cases before this court are complex and have far-reaching effects, consequences best addressed by timely provision of evidence. Arch's second point is similarly unpersuasive, as public records do not present circumstances warranting admission— indeed, publicly available materials and materials held by Arch should have been easier to introduce timely. Arch's effort to enter materials excluded by the ALJ, moreover, effectively seeks an end-run around ordinary discovery procedures. In sum, Arch failed to submit any evidence by its discovery deadline, despite having ample notice of much of the evidence it now seeks to introduce. Neither equity nor the Federal Rules of Appellate Procedure favor Arch's motion. We deny the motion.

**B. Liability Evidence Rules**

Arch argues that the regulatory liability evidence rules relied upon below violate both the provisions of the BLBA and the APA as incorporated by the Longshore Act. It contends in the alternative that DOL's interpretation of the rules as applied to Arch was arbitrary and capricious. We address each argument in turn.

1. The Propriety of the Liability Evidence Rules

Arch first argues that the liability evidence rules employed below impermissibly empower district directors to perform an evidentiary gatekeeping role that properly belongs to ALJs under the APA. "On petitions for review from the Benefits Review Board, we review the

Board's legal conclusions de novo." *Karst Robbins Coal Co. v. Dir., OWCP*, 969 F.3d 316, 323 (6th Cir. 2020).

Arch's argument rests on the relationship between the BLBA, the APA, and the Longshore Act. The Supreme Court has explained that the BLBA "incorporates the APA (by incorporating parts of the [Longshore Act]), but it does so except as otherwise provided by regulations of the Secretary." *Greenwich Collieries*, 512 U.S. at 271 (cleaned up).

Arch claims that the BLBA regulations' evidentiary procedures violate a provision of the Longshore Act that requires hearings administered under the Act to "be conducted in accordance with the" APA. 33 U.S.C § 919(d). The APA sets out procedural rules that govern a broad range of administrative proceedings. *See* 5 U.S.C. § 556. Its rules apply to certain hearings carried out under the Act, but those rules do "not supersede the conduct of specified classes of proceedings, in whole or in part, by or before boards or other employees specially provided for by or designated under statute." *Id.* § 556(b). The BLBA regulations then incorporate the APA's procedures "except as is otherwise provided by the Act or" DOL regulations because certain "procedures prescribed by the" Longshore Act and the APA "must be altered to fit the circumstances ordinarily confronted in the adjudication of a black lung claim." 20 C.F.R. § 725.1(j); *see* 30 U.S.C. § 932(a). Thus, the BLBA-authorized regulations expressly authorize departing from the procedures otherwise required by the Longshore Act and APA to address the unique circumstances surrounding black lung claims. And the APA specifically contemplates such departures. *See* 5 U.S.C. § 556(b). In short, the APA and the BLBA are consistent—the BLBA regulations' evidentiary procedures do not offend the APA.

It is also not clear that the BLBA-authorized liability evidence rules conflict with the APA's analogous rules. Arch takes issue with the requirement that evidence or notice of future evidence be given to a district director, not an ALJ, on the basis that the APA and Longshore Act require an ALJ to consider evidence and award benefits. *See* 20 C.F.R. § 725.415. But the BLBA regulations do not divest the ALJ of power to take evidence. *See id.* § 725.351. Instead, the ALJ may take evidence under appropriate circumstances. *See id*; *see also id.* § 725.414(c). And the ALJ is responsible for taking certain kinds of evidence (e.g., witness testimony) that the

parties noticed to the district director. *Id.* § 725.351. Ultimately, it is the ALJ who weighs evidence of each case and determines an award. *Id.*

Congress intended for this to be the case. The BLBA-authorized regulations consistently reference the requirement that evidence offered to contest liability must be brought before a district director. *See, e.g.*, 20 C.F.R. §§ 725.410, .414, .456, .457. The language of the liability evidence rules is clear: parties contesting their identification for liability have 90 days to supply or notice any evidence supporting their position. *See* 20 C.F.R. §§ 725.407, .408(b). The liability evidence rules are consistent with the provisions of the BLBA and the APA.

## 2. Interpretation of the Liability Evidence Rules

Arch also takes issue with the ALJ's reliance on the BLBA regulations in denying it discovery three years after the deadline to submit evidence. Arch argues that the rules do not apply to its particular circumstance because Arch sought discovery to challenge the DOL's alleged departure from past practice with self-insurers, rather than to defend against Howard's claim.[4] Arch alleges that the ALJ's denial of its motion to issue subpoenas on two DOL employees was arbitrary and capricious. The DOL counters that Arch sought these subpoenas, and pursued its challenge to the Bulletin, as a mechanism for disputing liability in Howard's case, and so its discovery requests fell squarely within the liability evidence rules.

An agency's actions are arbitrary and capricious when:

the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

---

[4]Arch appears to suggest that the rules should not apply to it because it challenged liability as an insurer, rather than an operator or employer. Nothing in the regulations, statutes, or caselaw supports this argument. In fact, the Board has long held that "liability evidence rules apply to carriers." *Olenick v. Olenick Bros. Coal Co.*, BRB No. 11-0833 BLA, 2012 WL 5267588 at *3 (Ben. Rev. Bd. Sept. 19, 2012) (citation omitted); *see also J.H.B. v. Peres Processing, Inc.*, BRB No. 08-0625 BLA, 2009 WL 2104861, at *4-5 (Ben. Rev. Bd. June 30, 2009) (per curiam) (applying liability evidence rules to a carrier contesting its liability); 20 C.F.R. §§ 725.407, .414(b)-(d).

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must articulate a "rational connection between the facts found and the choice made." *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

"Under the Department of Labor's regulations, no operator may submit evidence regarding the operator's capability of assuming liability for the payment of benefits unless it does so within ninety days of receiving notice that it is a 'potentially liable operator.'" *Appleton & Ratliff Coal Corp. v. Ratliff*, 664 Fed. App'x 470, 475 (6th Cir. 2016) (quoting 20 C.F.R. § 725.408). A party may submit new evidence to contest liability after the 90-day period has elapsed only in "extraordinary circumstances." *See* 20 C.F.R. §§ 725.456(b)(1), .457(c)(1).

After receiving the Notice of Claim on December 8, 2015 and the subsequent SSAE on March 17, 2016, Arch contested its liability identification in April 2016, but it did not submit any evidence before the final deadline of May 16, 2016. It was not until April 29, 2019, that Arch sought discovery in support of its position that the Bulletin improperly reassigned liability from Patriot to Arch. Regarding extraordinary circumstances warranting subpoenas to be served on DOL employees, Arch argued that it could not have timely presented evidence to the District Director because the D.C. case challenging the Bulletin was ongoing and because "experience had taught it that [the] DOL would not, in fact, afford it discovery to develop its claims." But the ALJ held that neither was an impediment to seeking discovery or presenting evidence to contest liability because the regulations still bound Arch in this case.

Accordingly, the ALJ denied Arch's request. Because Arch's dispute was over its "capability of assuming liability," the ALJ rationally held Arch to the statutory 90-day or extraordinary circumstance standard. The ALJ's application of the BLBA's liability evidence rules was neither arbitrary nor capricious.

## C. Bulletin 16-01

Trying a different tack, Arch contends that through Bulletin 16-01, the DOL changed "a Fifty-Year-Old Policy Retroactively and in violation of Corporate and Insurance Law Principles and the Regulations." Specifically, Arch argues that treating self-insurance the same as commercial insurance for liability purposes, especially in light of Arch's subsequent sale, 1)

ignores corporate separateness; 2) creates a new "rule" for self-insurance that is required to pass through notice and comment; and 3) departs from past practice in violation of the APA and due process principles. We address each argument below.

### 1. Self-Insurance, Commercial Insurance, and "Corporate Separateness"

Arch first argues that it was improperly found liable for Howard's claim because holding it accountable after its sale of Apogee violates principles of corporate separateness and the distinctions between self-insuring operators and those using commercial insurance. We review questions of law, including the interpretation of the BLBA, de novo. *See Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 243 (6th Cir. 2004). "If clear, the plain meaning of the statutory language controls." *Id.* at 246. We take the same approach when interpreting regulatory language. *See Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, 32 F.4th 548, 557 (6th Cir. 2022).

A self-insurer is obligated "[t]o pay when due, as required by the Act, all benefits payable on account of total disability or death of any of its employee-miners." 20 C.F.R. § 726.110(a)(1). Self-insurers, like commercial insurers, are bound by the terms of the BLBA. *Id.* § 726.1. For the purposes of BLBA liability, the pool of potentially liable parties is broad: "any transferee or transferor of a corporation or other business entity," and any "business entity which has had or will have a substantial and reasonably direct interest in the operation of a coal mine," may be liable under the BLBA. *Id.* § 726.4(b). "The failure of any such business entity to self-insure or obtain a policy or contract of insurance shall in no way relieve" it from "its obligation to pay" BLBA benefits. *Id.*

Arch invokes the theory of successor liability, claiming that its sale of Apogee's liabilities completely severed the two businesses and insulated it from future Apogee-originated claims.[5] It thus contends that holding Arch liable for Howard's claims, predicated on his service as an Apogee employee, is unlawful. But this ignores the plain language of the regulations

---

[5]Arch likewise argues that holding it accountable for Apogee's liabilities constitutes impermissible "veil piercing." But, as noted by the ALJ and Board, Arch was identified as the self-insurer on the claim, and it is true that Arch self-insured Apogee during Howard's employment. So, veil piercing is irrelevant to Arch's duty to perform its insurance promise, as there is no need to pierce the "veil" of Apogee to reach Arch's liability.

above.   Transfers of business interests and self-insurance are expressly contemplated by the statute and its implementing regulations, so principles of "corporate separateness" found elsewhere in the law do not change the statutory obligations at play here.**[6]**   Arch's identity as a self-insurer, rather than a corporate insurer, does not alter the statutory requirements for paying claims owed by an operator.

After its identification, it was up to Arch to show that it was not the liable party.  *See* 20 C.F.R. §§ 725.103, .410(b).  As noted above, Arch failed to take any action in this claim to prove as much within the procedural requirements of the BLBA and accompanying regulations.  This argument therefore fails.

### 2.  Applicability of Notice-and-Comment

"Under the APA, whenever agencies promulgate 'a rule that "intends to create new law, rights or duties"' . . . they must engage in a process known as notice-and-comment rulemaking." *Oakbrook Land Holdings, LLC v. Comm'r of Internal Revenue*, 28 F.4th 700, 710 (6th Cir. 2022) (quoting *Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018)), *cert. denied*, 143 S. Ct. 626 (2023).  Arch claims that Bulletin 16-01 constitutes a rule under the APA and, as such, DOL violated the APA by failing to provide for notice and comment.

We look to the "content of the agency's action," not the name it ascribes to an action, to determine whether it engaged in legislative rulemaking that required notice and comment. *Arizona v. Biden*, 31 F.4th 469, 482 (6th Cir. 2022).  A "hallmark[] of a substantive rule" is that the action "affect[s] individual rights and obligations."  *Id.*  (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979)).

In *Mann Construction, Inc. v. United States*, 27 F.4th 1138, 1143-44 (6th Cir. 2022), we held that a notice promulgated by the Internal Revenue Service (IRS) had "the 'force and effect of law'" and was therefore "subject to the notice-and-comment process" because it created a new duty for taxpayers that did not arise from a statute.  The notice at issue in *Mann* made taxpayers

---

**[6]**Arch argued below, as it does to this court, that commercial insurance uses an "occurrence trigger," while self-insurance uses a "claim trigger," for the purposes of determining a liable carrier.  Its attempt to distinguish the two lacks support in the rules or the regulations.

subject to penalties for failing to report transactions to the IRS that they did not previously need to report, effectively changing the law. *Id.* at 1143-44.  By contrast, in *Arizona*, we held that notice and comment was not required for an administrative policy that directed immigration officers to prioritize detention and removal of certain noncitizens based on specific criteria.  31 F.4th at 473, 482.  Although the effect of the guidance was to single out certain parties for potential expulsion, *Arizona* held that it did not "affect individual rights and obligations."  *Id.* at 482 (brackets omitted) (quoting *Chrysler Corp.*, 441 U.S. at 302).

Here, the Bulletin states that its purpose is to "provide guidance for district office staff in adjudicating claims in which the miner's last coal-mine employment of at least one year was with one of the . . . companies that have been affected by [Patriot's] bankruptcy."  U.S. Dep't of Labor, BLBA Bulletin No. 16-01, 1 (2015).  Relevant to this claim, it states that for "cases pending before district directors, in which . . . the PDO is not yet final," district directors are to find out "whether the claim is covered by Arch Coal's self-insurance," and if so, to "send a notice of claim" to Arch through its appropriate state claims address.  *Id.* at 3-4.

In reviewing this Bulletin, and in addition to our precedent on notice and comment requirements, we have the benefit of a sister circuit's decision on a comparable case challenging Bulletin 16-01 brought by Arch Coal in the D.C. Circuit.  *Acosta* recognized that "[i]t is well understood that the notice-and-comment provisions of section 553 of the APA do not apply to agency bulletins, policy statements, directives, guidances, opinion letters, press releases, advisories, warnings, or manuals that do not have the force of law."  888 F.3d at 501.  *Acosta* then held that unlike a rule, Bulletin 16-01 "does not 'alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.'"  *Id.* (quoting *James V. Hurson Assocs. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000)).

As the D.C. Circuit explained, Bulletin 16-01 simply guided district directors to provide claim notices to Arch where potentially appropriate.  Because the determination of liability remained to be made in the discretion of the district director and ALJ, Arch had the ability to contest its identification.  And Arch's status relative to potential claims did not change, because it was at all times a potentially liable party under the BLBA's regulations.  *See* 20 C.F.R.

§ 726.4(b).  As was the case in *Arizona*, the Bulletin did not create new rights nor liabilities.  *See* 31 F.4th at 482.  Accordingly, the Bulletin did not require notice and comment rulemaking.

### 3.    The DOL's Usual Practice with Self-Insuring Claims

Arch also contends that the Bulletin represents a departure from fifty years of DOL policy.  Yet the DOL correctly points out that Arch failed to supply any evidence showing that the DOL has historically treated self-insurers and commercial insurers differently with respect to BLBA claims.  In the absence of record evidence to support this contention, we affirm the Board.

### D.  Due Process and Notice

Arch's final argument is that it should be dismissed from this suit because it did not receive adequate notice that it was named as Apogee's carrier.  The core of Arch's argument is that the PDO issued by the District Director named only Patriot, not Arch, as the carrier. Examination of the record, however, shows that the PDO incorrectly included Patriot's name once as Apogee's self-insurer, but documents attached to the PDO otherwise named Arch as the relevant self-insurer on Howard's claim. The PDO was also certified and sent to Arch—not Patriot.

"The basic elements of procedural due process are notice and opportunity to be heard." *Arch of Ky., Inc. v. Dir., OWCP*, 556 F.3d 472, 478 (6th Cir. 2009).  A carrier's due process rights in the BLBA context are protected in part by 20 C.F.R. § 725.418, which states that "no operator may be finally designated as the responsible operator unless it has received notification of its potential liability pursuant to § 725.407, and the opportunity to submit additional evidence pursuant to § 725.410."  The adequacy of the notice provision in § 725.418 therefore turns on the information provided by the Notice of Claim and SSAE.

Arch invokes this court's decision in *Warner Coal Co. v. Director, OWCP*, 804 F.2d 346 (6th Cir. 1986)*,* to argue that "named parties, including insurers, must receive notice in the PDO as a matter of due process."  But nowhere in that case was a PDO mentioned, nor the regulation requiring that it name a carrier.  Instead, *Warner Coal* considered the broader issue of "whether . . . the Secretary of Labor must give written notice of the black lung claim to the insurance

carrier for the claimant's employer prior to the administrative adjudication of a claim affecting the carrier's liability." 804 F.2d at 346. It held that due process in the BLBA carrier liability context required "that the carrier be given adequate notice and an opportunity to defend," and so, "carriers must receive notice in [BLBA] claim proceedings." *Id.* at 347.

Prior to the award of benefits, Arch received notice of the proceedings and an opportunity to defend through both the Notice of Claim and the SSAE's identification of Arch as the liable carrier. Arch in fact received notice and subsequently participated in the claim by filing a CM-2970(a) form contesting its liability. And Arch has made it abundantly clear that after receiving the Notice of Claim in this and other cases following the issuance of Bulletin 16-01, it understood that DOL intended to name it as the liable party in claims such as Howard's. This knowledge, moreover, is the reason Arch offers to explain its filing of the D.C. case and its refusal to submit evidence per the issued schedule in this case. Thus, Arch had "adequate notice and an opportunity to defend" against its inclusion in Howard's claim. *Id.*

Accordingly, Arch has not shown that its due process rights have been violated.

## III. CONCLUSION

Because Arch has provided no extraordinary circumstances justifying its motion to expand the record, and because it has failed to make any meritorious argument on the merits of the Board's decision below, both its motion and petition before this court are **DENIED**.